IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**BLACKBURN LAW FIRM, PLLC, et al.**                                  **PLAINTIFFS**

**V.**                                                                                                                 **NO. 3:20-CV-38-DMB-JMV**

**ALLIED WORLD INSURANCE**
**COMPANY**                                                                                                   **DEFENDANT**

**ORDER**

After a state court complaint was filed against them, the plaintiffs initiated this federal court action against Allied World Insurance Company alleging breach of contract and seeking a declaratory judgment that Allied has a duty under a liability policy to defend and indemnify them in the state court case. Allied has moved to dismiss this federal action for failure to state a claim. Because the factual allegations of the state court complaint do not trigger coverage under the policy, dismissal will be granted.

**I**
**Procedural History**

On February 4, 2020, the Blackburn Law Firm LLC ("Law Firm"), the Estate of Barry C. Blackburn, Sr., Ginger Richards, and Kimberly Archer, filed a complaint in the United States District Court for the Northern District of Mississippi against Allied World Insurance Company. Doc. #1. The complaint, as amended,[1] seeks a declaratory judgment that an insurance policy issued by Allied to the Law Firm requires Allied to indemnify and defend the plaintiffs in a state court lawsuit currently pending in the Circuit Court of DeSoto County, Mississippi. Doc. #31 at 2–4. The complaint also asserts a breach of contract claim based on Allied's failure to provide

---

[1] On May 6, 2020, the plaintiffs, with leave of the Court, Doc. #32 at 4, filed an amended complaint to correct deficiencies in the diversity jurisdiction allegations.

indemnity and a defense for the plaintiffs in the state court lawsuit. *Id.* The complaint has two exhibits—the insurance policy, Doc. #31-1, and the state court complaint, Doc. #31-2.

Allied filed a motion to dismiss for failure to state a claim on April 2, 2020.[2] Doc. #10. The plaintiffs moved for an extension of time to respond to the motion. Doc. #19. The Court denied the extension for lack of good cause. Doc. #21.

On April 22, 2020, the plaintiffs filed a motion asking the Court to (1) convert Allied's motion to dismiss to a motion for summary judgment and order discovery on the converted motion; or (2) deny the motion to dismiss without prejudice; or (3) grant them a thirty-day extension to respond to the motion to dismiss.[3] Doc. #22 at 4. The plaintiffs also filed a motion for summary judgment on the issue of whether Allied has a duty to defend them in the state court action. Doc. #24.[4]

On April 30, 2020, the plaintiffs requested an expedited hearing on their summary judgment motion. Doc. #28. Allied's response to the motion states that "[o]nce briefing on the parties' competing substantive motions has been completed, [it] does not oppose the Court expeditiously addressing those motions together, when the Court's schedule permits." Doc. #40.

On July 22, 2020, the plaintiffs filed a response to Allied's motion to dismiss, with an accompanying memorandum. Docs. #46, #47. One week later, Allied moved to strike both the response and memorandum. Doc. #48. The plaintiffs did not respond to the motion to strike.

---

[2] Allied was granted two requested extensions to respond to the amended complaint. Docs. #5, #9.

[3] The plaintiffs also "request[ed] relief from the obligation to file a Memorandum of Authorities" "[i]n light of the straightforward nature of [the] motion." Doc. #22 at 4. Allied filed a response, Doc. #33, and the plaintiffs filed a reply, Doc. #39.

[4] The plaintiffs' motion for partial summary judgment is fully briefed. Docs. #25, #42, #43.

2

## II
## Motion to Convert

The plaintiffs seek to convert Allied's motion to dismiss to a motion for summary judgment because Allied attached a copy of a trust agreement to the motion to dismiss. Doc. #22 at 1–2. Alternatively, the plaintiffs ask the Court to deny the motion without prejudice or grant an extension of the deadline to respond to the motion to dismiss. *Id.* at 4.

Allied argues that the Court may properly consider the trust agreement because (1) it is a public record of which the Court can take judicial notice; and (2) it is central to the plaintiffs' claims and a partial portion of the trust agreement was attached to the complaint as part of the state court complaint. Doc. #33 at 3–4. Alternatively, Allied argues the Court may exclude the trust document and still find in its favor. *Id.* at 5. The plaintiffs reply that judicial notice is inappropriate because "the contents of the document are highly disputed." Doc. #39 at 1.

Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Because the Court has determined to exclude the trust agreement in analyzing the motion,[5] the motion to convert is denied. And because the plaintiffs did not provide any basis for their request that the Court deny the motion to dismiss without prejudice and did not file their response to the motion to dismiss until July 22, 2020, well

---

[5] The trust agreement attached to the motion to dismiss is excluded because the state court complaint, which is attached as an exhibit to the amended complaint in this federal case, contains quotations to and excerpts from the portions of the trust agreement relevant to the Court's analysis. *See* Doc. #31-2. Thus, the Court can resolve the pending motion without considering the exhibit. *See Austin v. Carwyle*, No. 3:15-cv-177, 2016 WL 1622006, at *1 n.1 (N.D. Miss. Apr. 19, 2016) ("[B]ecause it is clear on the face of the complaint and the attached documents that the Plaintiff has failed to allege a plausible claim against the City of Oxford, it is unnecessary to construe the instant motion as one for summary judgment.").

after the date of their requested extension, their alternative requests for a denial without prejudice or for an extension are also denied.[6]

### III
### Motion to Strike

Allied moves to strike the plaintiffs' response and memorandum opposing the motion to dismiss because they were filed more than three months after the response deadline. Doc. #48 at 2. As mentioned above, the plaintiffs failed to respond to the motion to strike.

A court, in the exercise of its inherent power to control its docket, may strike an untimely document. *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 534 (N.D. Miss. 2015). Here, the plaintiffs' deadline to respond to Allied's April 2, 2020, motion to dismiss was April 16, 2020. L.U. Civ. R. 7(b)(4). Although the plaintiffs requested a 30-day extension as alternative relief in their motion to convert filed April 22, 2020, the extension was denied and the plaintiffs sought no other extension to respond. And by failing to respond to the motion to strike, the plaintiffs have not provided any justification for why they waited an additional two months after the date of the requested extension to respond to the motion to dismiss. Allied's motion to strike is granted.

### IV
### Motion to Dismiss

#### A. Applicable Standards

"To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state

---

[6] The plaintiffs needed to show both good cause and excusable neglect for their alternative request for an extension because the motion to convert was filed after the plaintiffs' April 16, 2020, deadline to respond to the motion to dismiss. *See* Fed. R. Civ. P. 6(b). Excusable neglect has not been shown. The only argument the plaintiffs offer as to why they failed to act before the deadline is that they "thought they had an agreement with the defendant to be granted until May 20, 2020 to respond to the Motion to Dismiss, and filed an unopposed motion which the Court denied without prejudice to refile." Doc. #22 at 3 (record citation omitted). However, "[a] private agreement between parties neither relieves a movant seeking an out-of-time extension from demonstrating excusable neglect, nor strips this Court of its duty to find the same." *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 533 (N.D. Miss. 2015).

a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* "A written document that is attached to a complaint as an exhibit is considered a part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

### B. Allegations of the Complaint

Allied provided liability insurance to the Law Firm under a policy with an inception date of February 28, 2014, and an expiration date of February 28, 2015. Doc. #31 at 3; Doc. #31-1 at PageID 262.[7]

On July 12, 2019, Rebecca Lowry, as legal guardian of David Williams Lowry, Elenor Rebecca Lowry, and Phoebe Elizabeth Lowry, filed an action in the Circuit Court of Desoto County, Mississippi, against the Law Firm, the Estate, Barry Christopher Blackburn Sr., Richards, Archer, and John Does 1–5. Doc. #31 at 3; Doc. #31-2 at 1. The state court complaint alleges that (1) Richards, Archer, and Barry were all employees of the Law Firm; (2) Richards and Archer were both paralegals and Barry was their supervising attorney; (3) before Barry's death, Richards and Archer assisted him in drafting a trust agreement to distribute his assets; (4) Barry's intent was for his assets to pass to his son first and then to his nieces and nephews (the Lowry children) if his son died without any children; (5) the trust agreement contained language making the Lowry children beneficiaries if Barry's son predeceased him; (6) Barry died March 21, 2014, and his son died in July 2015; and (7) because Barry's son did not predecease him, the trust agreement was

---

[7] As exhibits attached to the complaint in this case, the policy and the state court complaint are properly considered on a Rule 12(b)(6) motion to dismiss. *Ferrer*, 484 F.3d at 780.

ambiguous and led to litigation regarding Barry's intent. Doc. #31-2 at 2–5. Based on these allegations, Lowry asserts that Barry, Richards, and Archer were negligent in drafting the trust agreement because it "failed to set forth the Trustor's clear intent in the Trust." *Id.* at 5.

The plaintiffs here allege the allegations of the state court complaint trigger coverage under the Allied insurance policy. Doc. #31 at 3.

### C. Analysis

Under Mississippi law,[8] "[a]n insurer's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006). Conversely, there is no duty to defend if the complaint alleges conduct that falls outside the policy's coverage. *Id.* Because the duty to defend is a separate, broader duty than the duty to indemnify, which arises only when "the insured becomes legally obligated to pay,"[9] it follows that when there is no duty to defend, there cannot be a duty to indemnify. *See Isom v. Valley Forge Ins. Co.*, 716 F. App'x 280, 287 (5th Cir. 2017) ("Because there is no duty to defend here, there can be no duty to indemnify.").

"When the words of an insurance policy are plain and unambiguous, the Court will afford them their plain, ordinary meaning and will apply them as written." *Rylee v. Progressive Gulf Ins. Co.*, 224 So. 3d 535, 537 (Miss. 2017). If ambiguities exist, they must be resolved in favor of the insured, as the non-drafting party. *Cont'l Cas. Co. v. Allstate Prop. & Cas. Ins. Co.*, 235 So. 3d

---

[8] The policy does not contain a choice of law clause. In this diversity action, the Court applies the law of the forum state. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019). The parties do not dispute that, because the policy was issued in Mississippi and all the subject events occurred in Mississippi, Mississippi law applies.

[9] *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).

40, 50 (Miss 2017). "[A]mbiguities do not exist simply because two parties disagree over the interpretation of a policy." *Id.*

Of relevance here, "exclusionary clauses must be written in clear and unmistakable language" and are "strictly interpreted." *Miss. Farm Bureau Mut. Ins. Co. v. Jones*, 754 So. 2d 1203, 1204 (Miss. 2000). When no ambiguity exists, exclusionary language is binding upon the insured. *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 70 (Miss. 1998).

Finally, "[w]here the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning. In determining the ordinary meaning, [the Mississippi Supreme Court] will often consult leading dictionaries." *Anglin v. Gulf Guar. Life ins. Co.*, 956 So. 2d 853, 860 (Miss. 2007) (cleaned up).

*1. Legal Services Wrongful Act*

Allied argues that because Barry "was overseeing the drafting of his own Trust for his own personal benefit," "the allegations that Plaintiffs failed to adequately ensure that the Trust set forth Blackburn's own intent are not acts, errors, or omissions that satisfy the Policy's definition of a Legal Services Wrongful Act." Doc. #11 at 12.

Among other things, the policy provides coverage for claims arising from a "Legal Services Wrongful Act." Doc. #31-1 at PageID 268. A "Legal Services Wrongful Act"[10] is defined, in part, as "any actual or alleged act, error or omission committed by an Insured, solely in the performance of or failure to perform Legal Services." *Id.* at PageID 276 (emphasis omitted). "Legal Services" in turn are defined as "those services performed on behalf of the Named Insured for others by an Insured … as a licensed lawyer in good standing … but only where such services were performed

---

[10] It also provides coverage for claims arising from a "Privacy Wrongful Act" or "Network Security Wrongful Act" but neither is at issue in this case.

7

in the ordinary course of the Insured's actives as a lawyer." *Id.* (emphasis omitted). "For" and "others" are not defined in the policy; however, Merriam-Webster defines "for" as a "function word to indicate the … recipient of [an] activity,"[11] and "other" as "being the one or ones distinct from that or those first mentioned or implied."[12]

The "Named Insured" under the policy is the Law Firm. *Id.* at PageID 262. "Insured" is defined to include lawyers and "other legal office staff" "in the performance of … Legal Services on behalf of the Named Insured." *Id.* at 275–76 (emphases omitted). Read together, "Legal Services" under the policy are services which are performed on behalf of the Law Firm, by a Law Firm employee, acting as a licensed lawyer in the ordinary course of the employee's activities as a lawyer, and when the recipient of such services is someone other than a Law Firm employee.

Here, the plaintiffs simply allege that "[t]he allegations of the underlying complaint are covered by the Allied World policy." Doc. #31 at 3. The state court complaint alleges that Richards, Archer, and Barry were negligent in drafting the trust agreement for Barry, not for a client outside of the Law Firm. Doc. #31-2 at 3–5. The plaintiffs do not allege that the drafting of the trust was work performed on behalf of the Law Firm. More important, the allegations in the state court complaint make clear that the recipient of the trust work performed was Barry, an employee of the Law Firm.[13] Thus, there are no allegations within the state court complaint that Barry, Richards, or Archer were negligent in performing legal services *for others*. Based on the

---

[11] *See For*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/for (last accessed Mar. 2, 2021).

[12] *See Other*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/other (last accessed Mar. 2, 2021).

[13] In their motion for summary judgment, the plaintiffs argue that because the Lowry children were not employees of the Law Firm and, as contingent beneficiaries of the trust, were damaged by "the alleged acts and omissions of Blackburn, Richards, and Archer on behalf of The Blackburn Law Firm," "the allegations of the [state court] complaint satisfy the requirement of legal services performed for others." Doc. #25 at 8. While the plaintiffs may have arguably benefited from the services performed for Barry, they were not the *recipients* of such services.

plain language of the policy, there are no allegations in the state court complaint that would trigger coverage.

### 2. Policy Period

Even if the allegations of the state court complaint triggered coverage, the plaintiffs would fare no better, as the Court agrees with Allied that "coverage under the Policy also is precluded for the Firm, Richards, and Archer … because the 2019 Negligence Action is not a Claim first made during the Policy Period (which expired in February 2015) or any Extended Reporting Period." Doc. #11 at 15.

The policy provides that it applies "only to claims first made during the policy period or any extended reporting period." Doc. #31-1 at PageID 262. The policy period is from February 28, 2014, until February 28, 2015. *Id.* An endorsement to the policy provides for an extended reporting period for claims against Barry until his estate is discharged. *Id.* at PageID 293. However, the language of the endorsement does not apply to the Law Firm, Richards, or Archer.

"Claims-made policies cover only those losses caused by wrongful action taking place at any point in time as long as the claim is made during the period the policy is in effect." *Minn. Life. Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 968 (Miss. 2014) (internal quotation marks omitted). The state court complaint was not filed until July 12, 2019, over four years after the claim period expired.[14] Because the claim was not made during the policy period, there is no coverage under the policy for the Law Firm, Richards, or Archer.

---

[14] According to allegations of the state court complaint, Richards and Archer did not even become aware of the ambiguity in the trust agreement until after Barry's son's death in July 2015. Doc. #31-2 at 3–4.

9

### D. Summary

Based on the allegations in the state court complaint, the plaintiffs' alleged conduct in the underlying state court case is not covered by the insurance policy because the trust agreement was prepared for Barry, rather than for others as required by the definitions within the policy, and because the claim for coverage for the Law Firm, Richards, and Archer was not made within the policy period. Allied therefore does not have a duty to defend or a duty to indemnify the plaintiffs.[15] Accordingly, Allied's motion to dismiss will be granted.

## V
## Remaining Motions

Having determined that Allied's motion to dismiss will be granted, the Court need not consider the plaintiffs' motion for summary judgment, Doc. #24, and motion to expedite hearing, Doc. #28. These motions will be denied as moot.

## VI
## Conclusion

In accordance with the above:

1. The plaintiffs' motion to convert [22] is **DENIED**.

2. Allied's motion to strike [48] is **GRANTED**. The plaintiffs' response [46] and memorandum [47] are **STRICKEN**.

3. Allied's motion to dismiss [10] is **GRANTED**.

4. The plaintiffs' motion for partial summary judgment [24] and motion to expedite hearing [28] are **DENIED as moot**.

**SO ORDERED**, this 3rd day of March, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[15] In light of this conclusion, the Court need not address Allied's arguments regarding exclusions under the policy.